# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| SAIDU KARGBO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Civil Action No. 15-698 (RBW) |
| | ) |
| NATIONAL RAILROAD PASSENGER | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

_____)

## <u>MEMORANDUM OPINION</u>

Saidu Kargbo, the <u>pro se</u> plaintiff in this civil case, filed a complaint against his

employer, the National Railroad Passenger Corporation ("Amtrak"), alleging discrimination on

the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e-2 to -3 (2012) ("Title VII"), and the Civil Rights Act of 1866, as

amended, 42 U.S.C. § 1981 ("§ 1981").  Complaint ("Compl.") ¶ 1.  Currently before the Court

are the Defendant's Motion for Summary Judgment ("Def.'s Mot.") and the Plaintiff['s] Motion

for Summary Judgment ("Pl.'s Mot.").  Upon careful consideration of the parties' submissions,[1]

the Court concludes that it must grant Amtrak's motion and deny the plaintiff's motion.

---

[1] In addition to the filings already identified, the Court also considered the following submissions in reaching its decision: (1) the Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"); (3) the Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment ("Def.'s Opp'n & Reply"); (4) the Plaintiff['s] Summary Judg[]ment and Opposition to Defendant's Summary Judg[]ment – Sup[p]lemental Arguments, ECF No. 34 ("Pl.'s Opp'n"); (5) the plaintiff's Reply in Support to Summary Judgment and Opposition to Defend[a]nt['s] Opposition for Summary Judg[]ment, ECF No. 36 ("Pl.'s Reply"); and (6) the plaintiff's List of Jobs, ECF No. 20.

# I.    BACKGROUND

The plaintiff is a Black male who was born in Sierra Leone.  See Compl. ¶ 7.  He immigrated to the United States in 2004 and became a naturalized citizen.  See id.  The plaintiff has been an Amtrak employee in the District of Columbia since November, 2006, id. ¶ 8, and he has held four different positions at Amtrak: Electrician Journeyman, Management Associate, Locomotive Inspector, and Service Engineer, Def.'s Facts ¶ 3.

On December 6, 2013, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights, alleging that Amtrak discriminated against him on the basis of his race and national origin by failing to hire him for approximately seventy Engineering Management positions for which the plaintiff had applied between December 1, 2010, and December 1, 2013.  See Def.'s Mot., Exhibit ("Ex.") 10 (Charge of Discrimination) at 1.  On January 26, 2015, the EEOC mailed to the plaintiff a Dismissal and Notice of Rights form, informing him that "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  See Compl., Attachment ("Att.") 1 (Dismissal and Notice of Rights) at 1.  The EEOC advised the plaintiff that if he wished to file suit on his Title VII claim, he must do so within ninety days of his receipt of the Dismissal and Notice of Rights.  Id., Att. 1 (Dismissal and Notice of Rights) at 1.

On May 7, 2015, the plaintiff filed his Complaint, alleging that Amtrak unlawfully denied him promotions that he sought between 2011 and 2015 due to his race and national origin, in violation of Title VII and § 1981.  See id. ¶¶ 1, 9–10.  Because the plaintiff's Complaint does not specify the specific positions to which he applied, see generally id. ¶¶ 9–15, he produced during discovery a list of the various positions he is contesting in this matter.  See List of Jobs at 1–2.

That list is reproduced below, along with the dates of the hiring decisions, which were provided

by Amtrak:[2]

1. Electrician Technician Rider Position: December 2, 2009.  Def.'s Facts ¶ 27.

2. ACSES Engineer—Position Number 90117918: June 24, 2010.  Id. ¶ 30.

3. General Foreman—Position Number 90037137: July 15, 2010.  Id. ¶ 38.

4. Senior Engineer Signal Design—Position Number 90032809: February 4, 2011.
   Id. ¶ 48.

5. General Foreman—Position Number 90000776: March 14, 2011.  Id. ¶ 55.

6. Service Engineer—Position Number 90036823: March 16, 2011.  Id. ¶ 68.

7. General Foreman—September 2011: February 6, 2012.  Id. ¶ 83.

8. Mechanical Engineer—Position Number 90142738: February 3, 2012.  Id. ¶ 104.

9. Systems Engineer—January 2011: no decision date supplied.  Id. ¶¶ 88–101.

10. Engine Service Instructor—Position Number 90112809: October 15, 2012.  Id.
    ¶ 114.

11. Systems Engineer—Position Number 90166004: Job cancelled in October
    2013.  Id. ¶ 119.

12. Foreman III—Position Number 90167602: March 11, 2014.  Id. ¶ 131.

13. Foreman II—Position Number 90067441: March 25, 2014.  Id. ¶ 144.

14. Foreman II—Position Number 90008122: March 25, 2014.  Id. ¶ 152.

15. Foreman II—Position Number 90167601: June 26, 2014.  Id. ¶ 160.

16. Foreman II—Position Number 90131504: after June 2014.  Id. ¶ 167.

17. Service Engineer HSR—Position Number 90073564: after June 2014.  Id.
    ¶ 208.

---

[2] The plaintiff does not contest these dates supplied by Amtrak, and thus they are admitted.  See Local Rule 7(h) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

18. Service Engineer HSR—Position Number 90073565: after October 2014.  <u>Id.</u> ¶ 227.

19. High Speed Rail Supervisor Technician—Position Number 90137403: March 2015.  <u>Id.</u> ¶ 247.

20. General Foreman—Position Number 90001629: March 20, 2015.  <u>Id.</u> ¶ 254.

## II.     STANDARD OF REVIEW

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party.  <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial."  <u>Anderson</u>, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, as "there must be [some] evidence on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.

4

### III.     ANALYSIS

**A.     The Applicable Statute of Limitations for § 1981 Claims**

Section 1981 prohibits racial discrimination in contract formation and enforcement.  See 42 U.S.C. § 1981.  Because § 1981 does not contain a statute of limitations, the Supreme Court "held in Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987), that federal courts should apply 'the most appropriate or analogous state statute of limitations' to claims based on asserted violations of § 1981." Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371 (2004).  In the District of Columbia, the applicable statute of limitations is three years.  See D.C. Code § 12-301(8) (2009) (defining the catch-all statute of limitations period as three years); see also Carney v. Am. Univ., 151 F.3d 1090, 1096 (D.C. Cir. 1998) (applying section 12-301(8)'s three-year statute of limitations period to § 1981 claims).

In 1991, Congress amended § 1981 to include protection from racial discrimination in post-contract formation conduct.  See Jones, 541 U.S. at 372–73.  As a result of this amendment, § 1981 claims challenging post-contract formation conduct are governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period for "civil action[s] arising under an Act of Congress enacted after" December 1, 1990.  Jones, 541 U.S. at 375 (alteration in original).

The Court concludes that the plaintiff's claims are still governed by the District of Columbia's three-year statute of limitations period because his claims challenge his non-selection for various positions within Amtrak.  See Compl. ¶¶ 9–10, 17.  "[C]laims of racially discriminatory . . . promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection." Patterson v. McLean Credit Union, 491 U.S. 164, 185 (1989) (interpreting § 1981 prior to its amendment in 1991), superseded by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, as recognized in CBOCS West, Inc. v.

Humphries, 553 U.S. 442, 449 (2008); see also id. ("Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.").  If the plaintiff had been selected for any of the positions for which he now challenges his non-selection, he would have had "a new and distinct relation" with Amtrak, and thus, his claims would have been actionable prior to the 1991 amendments to § 1981.  See id.  As a result, the District of Columbia's three-year statute of limitations period applies.  See Lattisaw v. District of Columbia, 118 F. Supp. 3d 142, 156 (D.D.C. 2015) ("[T]he key to determining which statutory period applies in any given case is whether the claims at issue arise under the pre- or post-amendment portion of [§] 1981."); see also Uzoukwu v. Metro. Wash. Council of Gov'ts, 27 F. Supp. 3d 62, 66 (D.D.C. 2014) (same).

Amtrak argues that the plaintiff's challenges of his non-selection for positions that Amtrak filled before May 7, 2012 are time-barred by the three-year statute of limitations.  See Def.'s Mem. at 10–11.  The Court agrees.

The plaintiff filed his Complaint on May 7, 2015.  See Compl. at 1.  Accordingly, the challenged hiring decisions must have occurred after May 6, 2012, to be actionable in this Court. Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (noting that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" to calculate time periods for filing Title VII actions).  Therefore, the Court concludes that because the first eight positions on the list above were filled prior to May 7, 2012, see supra at 3–4, three years before the plaintiff filed his Complaint, see Compl. at 1, these positions are not actionable under § 1981.

**B.      Failure to Exhaust Administrative Remedies for Title VII Claims**

Amtrak also argues that the plaintiff's Title VII claims are barred because he failed to

timely exhaust his administrative remedies as to these claims.  See Def.'s Mem. at 11–15.  The

District of Columbia Circuit has made clear that "Title VII '[c]omplainants must timely exhaust

their administrative remedies before bringing their claims to court.'"  Payne v. Salazar, 619 F.3d

56, 65 (D.C. Cir. 2010) (alteration in original) (quoting Bowden v. United States, 106 F.3d 433,

437 (D.C. Cir. 1997)).

> In this regard, prior to filing a Title VII suit in federal court, a complainant must
> file a charge of discrimination with the EEOC . . . within 300 days of [the alleged
> unlawful] practice if the complainant "has initially instituted proceedings with a
> State or local agency with authority to grant or seek relief from such practice."

Lattisaw, 118 F. Supp. 3d at 154 (quoting 42 U.S.C. § 2000e-5(e)(1)).

In this case, the plaintiff filed his charge of discrimination with the EEOC and the District

of Columbia Office of Human Rights on December 6, 2013.  See Def.'s Mot., Ex. 10 (Charge of

Discrimination) at 1.  Therefore, to be actionable in this Court, the hiring decisions challenged by

the plaintiff under Title VII must have occurred after February 8, 2013, to fall within 300 days of

December 6, 2013.  The Court concludes that because every position except number 11 on the

list above was either filled before February 8, 2013, or after the plaintiff filed his charge of

discrimination on December 6, 2013, see supra at 3–4, the plaintiff failed to either exhaust or

timely exhaust his administrative remedies under Title VII with respect to all of the challenged

hiring decisions except for Systems Engineer—Position Number 90166004.[3]

---

[3] Amtrak also contends that all of the plaintiff's Title VII claims must be dismissed because he failed to file his
Complaint within ninety days of receiving his Dismissal and Notice of Rights from the EEOC.  See Def.'s Mem. at
11–12.  The EEOC mailed the Dismissal and Notice of Rights to the plaintiff on January 26, 2015.  See Compl., Att.
1 (Dismissal and Notice of Rights) at 1.  Assuming a five-day presumptive notice period following the mailing to
the plaintiff, see Nkengfack v. AARP, 818 F. Supp. 2d 178, 181–82 (D.D.C. 2011), the plaintiff is deemed to have
received the Dismissal and Notice of Rights on January 31, 2015.  Thus, absent any tolling, the plaintiff's Complaint
had to be filed by April 30, 2015, ninety days after January 31, 2015.  See 42 U.S.C. § 2000e-5(f)(1).  The plaintiff,

(continued . . . )

C.      **The Plaintiff's Remaining Claims**

The plaintiff's challenges to his non-selection for the twelve remaining positions[4] are actionable under § 1981, and his challenge concerning the Systems Engineer—Position Number 90166004 is actionable under both § 1981 and Title VII.  See infra at 4–7.

"In order to evaluate claims under 42 U.S.C. § 1981 . . . , courts use the three-step McDonnell Douglas framework for establishing racial discrimination under Title VII."  Carney, 151 F.3d at 1092–93 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, by providing proof of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (internal citations omitted).  If the plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."  McDonnell Douglas, 411 U.S. at 802.

---

( . . . continued)
however, filed his Application to Proceed in District Court Without Prepaying Fees or Costs (the "IFP motion") on April 23, 2015, see Pl.'s Mot., Ex. 3 (Complaint) at 5, within the ninety-day timeframe, see Nkengfack, 818 F. Supp. 2d at 182 (noting that "[i]t is well settled . . . that the statutory filing period [for Title VII claims] is tolled while such an application to proceed IFP is pending before the Court").  Amtrak concedes in its Reply that, upon consideration of the plaintiff's IFP motion, the plaintiff's remaining Title VII claim was timely exhausted.  See Def.'s Reply at 5.

[4] Amtrak notes that the plaintiff only pleaded discrimination in his Complaint based on Amtrak's failure to hire him for Service Engineer and Foreman positions, see Def.'s Mem. at 15 (citing Compl. ¶¶ 1, 9), and therefore argues that the plaintiff's claims of discrimination related to his non-selection for other positions he identified in discovery "should be dismissed," id. at 15–16.  Amtrak is correct that "parties may not amend their operative pleadings through discovery," Sloan, 689 F. Supp. 2d 94, 120 (D.D.C. 2010), and thus, the plaintiff's failure to properly plead in his Complaint his non-selection for the positions numbered 9, 10, 11, and 19, see supra at 3–4, serves as an additional basis to enter summary judgment in favor of the defendant, see Mattiaccio v. DHA Group, Inc., 87 F. Supp. 3d 169, 174 n.8 (D.D.C. 2015) (declining to consider a pro se plaintiff's allegation in his opposition to the defendant's motion for summary judgment because the allegation was not raised in his complaint).  However, even though summary judgment is warranted for that failure, given the plaintiff's pro se status, as well as the fact that Amtrak was put on notice of the plaintiff's allegations of discrimination as it related to these other positions and was able to contest them on the merits, see Def.'s Mem. at 17–39, the Court will address these claims on the merits.

Once the employer offers a legitimate, nondiscriminatory justification for its action, "the McDonnell Douglas framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination vel non." Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal citation and quotation marks omitted). Thus, after the employer makes such a showing, "the plaintiff must prove that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives." Id. (internal citations omitted). Typically, plaintiffs rely on one of two types of evidence to establish pretext: (1) "the employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision," or (2) "the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, [gender], or national origin more favorably in the same factual circumstances." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 495 (D.C. Cir. 2008) (internal citations omitted); see also Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO, 548 F.3d 137, 144 (D.C. Cir 2008) ("A plaintiff, who retains the burden of persuasion throughout, may show pretext in a number of ways, including by offering evidence of more favorable treatment of similarly situated persons who are not members of the protected class or that the employer is lying about the proffered justification." (citations omitted)). If the plaintiff fails to present such evidence, summary judgment must be granted for the employer. Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 27–28 (D.C. Cir. 1997).[5]

---

[5] The plaintiff asserts that Amtrak "fail[ed] to produce vital information" during the discovery process. See Pl.'s Mot. at 1; see also Pl.'s Reply at 1 ("Amtrak failed to produce relevant documents/information in discovery, according to [Amtrak], because those documents do not exist or they are not kept in the ordinary course of business . . . ."). The plaintiff, however, does not specifically identify what information was not produced, nor does he explain how such information would entitle him to judgment as a matter of law, as he contends it would. See Pl.'s Reply at 2. The plaintiff appears to be seeking information regarding the educational background of various hiring managers, see Pl.'s Reply at 7, but, to the extent the Court construes this request as a request under Rule 56(d), see Fed. R. Civ. P. 56(d) (allowing the court to defer considering a motion for summary judgment to allow for

(continued . . . )

1.       **Prima Facie Case: Systems Engineer—January 2011 and Systems Engineer—Position Number 90166004**

In his List of Jobs, the plaintiff asserts that he applied for a Systems Engineer position on January 31, 2011.  See List of Jobs ¶ 16.  According to Amtrak, the plaintiff "has provided no evidence that he applied for a Systems Engineer position on January 31, 2011."  Def.'s Facts ¶ 89.  In response, the plaintiff directs the Court to his Exhibits 5, 6, and 9, see Pl.'s Mot. at 30, none of which are availing.  Exhibit 5 consists of various course descriptions, see id., Ex. 5 (Course Descriptions for MSc (Comm. Tech.) and MBA (Project Management)) at 1–8, while Exhibit 6 is a copy of the plaintiff's resume, see id., Ex. 6 (Resume of Saidu ST Kargbo) at 1–2. And, Exhibit 9 is a copy of the plaintiff's Amtrak employment account, which lists the status of his various applications.  See id., Ex. 9 (Data Overview) at 1–4.  Of the various applications for promotions submitted to Amtrak by the plaintiff, only two are for "Systems Engineer" positions. One of these is in "draft" status and thus has no application date, see id., Ex. 9 (Data Overview) at 3, while the other lists an application date of September 23, 2013, see id., Ex. 9 (Data Overview) at 3.  Accordingly, because the plaintiff has not provided any evidence that he submitted an application for a Systems Engineer position to Amtrak in 2011, he has failed to establish a prima facie case that he suffered an adverse employment action in regards to any such position.  See Nails v. England, 311 F. Supp. 2d 116, 123 (D.D.C. 2004) ("[The p]laintiff has provided no evidence that she applied for the positions . . . .  Accordingly, [the] plaintiff has not

---

( . . . continued)

additional discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" (emphasis added)), the Court denies the plaintiff's request for this information because the plaintiff "did not make an adequate showing" as to "why these facts are necessary to the litigation," Jideani v. Wash. Metro. Area Transit Auth., 979 F. Supp. 2d 77, 83 n.4 (D.D.C. 2013) (denying a pro se plaintiff's Rule 56(d) motion).  To the contrary, the plaintiff asserts that he "has absolutely supplied enough evidence on which any jury could find that Amtrak's articulated reasons for its hiring decisions were pretext for unlawful discrimination."  Pl.'s Reply at 8.

established that she was subject to an adverse employment action, as is required for a prima facie case of discrimination or retaliation.").

As for Systems Engineer—Position Number 90166004, Amtrak asserts that it cancelled this position "due to budgetary reasons," and thus, "no one was hired for the position."  Def.'s Facts ¶ 119; see also Def.'s Mot., Ex. 33 (Declaration of Robert Cole ("Cole Decl.")) ¶ 6.  The plaintiff did not refute this assertion in any of his filings.  See generally Pl.'s Mot.; Pl.'s Opp'n; Pl.'s Reply.[6]  The Court therefore concludes that, because this position was no longer available, the plaintiff cannot establish "that he applied and was qualified for an available position." Morgan v. Fed. Home Loan Mortg. Corp., 172 F. Supp. 2d 98, 108 (D.D.C. 2001) (citing Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).  Accordingly, the plaintiff has not established a prima facie case of discrimination as a result of his non-selection for Systems Engineer— Position Number 90166004.

### 2.      The Plaintiff's Evidence of Pretext for the Remaining Positions

#### a.      Engine Service Instructor—Position Number 90112809

Amtrak selected Deborah Chaison to fill Engine Service Instructor—Position Number 90112809, because she had worked as a locomotive engineer for twenty-three years and had experience training student engineers.  See Def.'s Facts ¶¶ 114–16.  Amtrak did not interview the plaintiff or select him for this position "because he had no locomotive engineer experience."  Id. ¶ 113.  The plaintiff did not respond to Amtrak's argument regarding Chaison's relative qualifications or even mention the Engine Service Instructor position in its filings.  See generally

---

[6] The Court considers all of the plaintiff's filings collectively.  See Fennell v. AARP, 770 F. Supp. 2d 118, 121 (D.D.C. 2011) ("[W]here the non-movant is proceeding pro se and has filed multiple submissions in opposition to the motion to dismiss, the district court should endeavor to read the party's filings together and as a whole.").

Pl.'s Mot.; Pl.'s Opp'n; Pl.'s Reply.  Therefore, the plaintiff has not provided any evidence to establish that Amtrak's stated reasons for hiring Chaison over the plaintiff were pretextual.

### b.     Foreman III—Position Number 90167602

Amtrak selected Thomas Huffman for Foreman III—Position Number 90167602, because he had four years of work experience as a Foreman III, including "experience supervising Foreman II and craft employees."  Def.'s Mot., Ex. 42 (Declaration of Robert Frank ("Frank Decl.")) ¶¶ 6, 8.  Amtrak interviewed the plaintiff for the position, but did not select him because he "had not previously worked as a Foreman for Amtrak," and therefore was less qualified than Huffman.  Id., Ex. 42 (Frank Decl.) ¶¶ 7–8.  The plaintiff contends in response that "[Amtrak] cannot state that every foreman in Amtrak had to have worked before as a foreman first before (as a criterion) for selection."  Pl.'s Mot. at 33.  Contrary to the plaintiff's assertion, Amtrak is free to choose whatever non-discriminatory employment criteria it deems appropriate to evaluate its applicants, see Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003) ("Because courts are not 'super-personnel department[s] that reexamine[ ] an entity's business decision[s],' we defer to the [employer's] decision of what nondiscriminatory qualities it will seek in filling the [ ] position." (alterations in original) (quoting Dale v. Chi. Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986))), and the Court concludes that Amtrak's determination that Huffman was more qualified for the position than the plaintiff because Huffman had previous Foreman III experience is not pretextual.  Accordingly, the plaintiff has failed to produce any evidence to rebut Amtrak's explanation for hiring Huffman instead of the plaintiff for this position that would permit a reasonable jury to infer discrimination.

### c.    Foreman II—Position Numbers 90067441, 90008122, 90167601

These three Foreman II positions are union-covered positions, <u>see</u> Def.'s Facts ¶¶ 138, 151, 159, and thus, "their terms and conditions of employment are governed by a collective bargaining agreement between Amtrak and [the American Railway Supervisors Association]," <u>id.</u> ¶ 139.  Under this agreement, vacancies must be "bulletined for [five] working days before being awarded . . . .  Bulletined positions [are] awarded to the senior applicant within [five] working days of the close of the bulletin period."  <u>Id.</u> ¶ 142 (alteration in original) (quoting the collective bargaining agreement).  "Because [the plaintiff] has never worked as a Foreman, he does not have seniority under the [ ] collective bargaining agreement," <u>id.</u> ¶ 148, and therefore, he was not awarded any of these positions as a result of the collective bargaining agreement, <u>see</u> <u>id.</u> ¶¶ 144, 152, 160.

The plaintiff argues in response that "[s]eniority was not a requirement because bids, not applications, are placed by applicants.  Interviews are not conducted for [the] collective bargaining agreement jobs and selection is based on seniority only."  Pl.'s Mot. at 33.  The Court finds this statement regarding whether or not seniority was a requirement for these positions to be contradictory; in any event, the plaintiff cites no evidence to support his assertions regarding the bidding, interviewing, and selection process for these positions, <u>see</u> <u>id.</u>, and thus, his factually unsupported conclusory allegations are insufficient to survive summary judgment, <u>see</u> <u>Greene v. Dalton</u>, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Because [the plaintiff's] claim [under Title VII] rest[ed] entirely upon a conclusory representation, the district court was right to dismiss it.").

### d.    Foreman II—Position Number 90131504

Amtrak selected six people for this position and divided the hiring decisions between two separate panels.  <u>See</u> Def.'s Facts ¶¶ 168–70.  The hiring panel that reviewed the plaintiff's

application hired Rodney Ballance, William Kearney, Kwesi Francis, and Jeremy Long for four

of the six open positions.  See id. ¶¶ 174, 176.  These four candidates "were selected over [the

plaintiff] because they performed better during their interviews," id. ¶ 177, and "because they

demonstrated better leadership skills either through prior work experience or through their

demeanor in the interview," id. ¶ 178.  According to Michael Talley, a member of the hiring

panel, the plaintiff scored a "3" on the interview, see Def.'s Mot., Ex. 58 (Declaration of Michael

Talley ("Talley Decl.")) ¶ 10, because his answers

> were very general and he seemed to simply be saying what he thought we wanted
> to hear.  For example, he was unable to provide any specifics about the work he
> performed as a Service Engineer in New York or the goals he achieved or obstacles
> he overcame in that position.  In other words, he was unable to provide specific
> details to show that he had the necessary leadership skills.  Similarly, other answers
> he gave indicated that he did not have the supervisory and management skills we
> were looking for in a Foreman II.  [The plaintiff's] demeanor was also very casual,
> less professional than the other candidates, and did not set the tone we wanted to
> see for a leader in the Foreman II position.

Id., Ex. 58 (Talley Decl.) ¶ 9.

The plaintiff asserts that he had the requisite experience, knowledge, and training for a

Foreman II position, see Pl.'s Opp'n at 26, and states that his interview responses "may [have]

seem[ed] scripted . . . due to the accuracy of [his] own answers," id.  In addition, the plaintiff

states that "Talley's declaration is very divisive, apartheid and discriminatory just by itself," id.,

because it "depict[s the p]laintiff as totally worthless," id. at 28.  The plaintiff also contends that

Long and Kearney were less qualified than him.  See id. at 30–33, 37–38.  Specifically, the

plaintiff notes that Long has only a high school education and two years of prior experience

working on passenger cars, in comparison with the plaintiff's two master's degrees and seven

years of prior work experience at Amtrak working on passenger cars and locomotives.  See id. at

31–32.  As for Kearney, the plaintiff notes that Kearney had four fewer years of work experience

14

at Amtrak than the plaintiff, that there is no proof of Kearney's degree in his application, and that

Kearney had been subject to prior discipline at Amtrak.  See id. at 37.

The plaintiff's allegations alone are insufficient to survive summary judgment.  As this

Circuit has explained,

> [w]hen an employer says it made a hiring decision based on the relative
> qualifications of the candidates, "we must assume that a reasonable juror who might
> disagree with the employer's decision, but would find the question close, would not
> usually infer discrimination on the basis of a comparison of qualifications alone."
> Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc).  On the
> other hand, if a factfinder can conclude that a "reasonable employer would have
> found the plaintiff to be significantly better qualified for the job, but this employer
> did not, the factfinder can legitimately infer that the employer consciously selected
> a less-qualified candidate—something that employers do not usually do, unless
> some other strong consideration, such as discrimination, enters into the picture."
> Id.; see also Holcomb, 433 F.3d at 897; Stewart v. Ashcroft, 352 F.3d 422, 429–30
> (D.C. Cir. 2003).  Applying Aka, we have explained that "[i]n order to justify an
> inference of discrimination, the qualifications gap must be great enough to be
> inherently indicative of discrimination."  Holcomb, 433 F.3d at 897.  To conclude
> otherwise would be to render the judiciary a "super-personnel department that
> reexamines an entity's business decisions"—a role we have repeatedly disclaimed.
> See id. (quotation marks omitted).

Jackson, 496 F.3d at 707.  Here, Talley noted the following regarding the successful candidates'

interviews and prior leadership experience:

1.  Ballance scored a "5" on the interview because he was "was very professional
    during his interview and provided specific examples of his prior leadership
    experience," such as his experience supervising over 300 sailors in the U.S.
    Navy as a Flight Line Operations Chief.  See Def.'s Mot., Ex. 58 (Talley Decl.)
    ¶ 11; see also id., Ex. 60 (Resume of Rodney W. Ballance);

2.  Kearney scored a "4" on the interview because "he was very confident and
    professional and . . . answered questions directly and with specifics that showed
    he had the experience and skills," such as supervising mechanical personnel
    during his career in the U.S. Army and "filling in for his Foreman [at Amtrak]
    on multiple occasions."  Id., Ex. 58 (Talley Decl.) ¶¶ 13–14;

3.  Francis scored a "4" on the interview because of his "calm, professional, and
    knowledgeable" demeanor, as well as his experience managing employees as a
    Mechanical Supervisor for Norfolk Southern railroad, which involved "many
    of the same duties as a Foreman II at Amtrak."  Id., Ex. 58 (Talley Decl.) ¶¶ 16–
    17;

4.  Long scored a "3" on the interview, "but his demeanor was more professional than [the plaintiff's] and he was able to answer questions more directly and with more specifics than [the plaintiff]."  Id., Ex. 58 (Talley Decl.) ¶ 18.  Long also had experience instructing other employees as Lead Carman at Amtrak.  Id., Ex. 58 (Talley Decl.) ¶ 18.

Talley also stated that the plaintiff's educational degrees "did not make him a more qualified candidate" because, "[a]lthough [the plaintiff] had more education than the other candidates, he appeared less prepared to take on a leadership position based on his performance and demeanor in his interview."  Id., Ex. 58 (Talley Decl.) ¶ 19.

The Court concludes that there is no "great" qualifications gap between the plaintiff and the selected candidates, see Holcomb, 433 F.3d at 897, even though the plaintiff has greater formal education than the chosen candidates.  The plaintiff's two master's degrees did not necessarily make him more qualified for the Foreman II position because Amtrak had made clear in its job announcement that a college degree was not a requirement for this position.  See Def.'s Mot., Ex. 59 (Job Title: Foreman II Ful—90131504—Washington) at 2 (stating that the preferred education was "some college or technical school and/or journeyman qualification").  Rather, the job announcement made clear that leadership experience, as well as "supervisory experience in an operating environment," were essential or preferred requirements.  See id., Ex. 59 (Job Title: Foreman II Ful—90131504—Washington) at 2–3 (listing "[l]eadership, decision making, and team building skills" as required work experience, and listing "some supervisory experience in an operating environment" as preferred work experience).  The Court concludes that Amtrak was permitted to prioritize leadership experience and interview performance over formal education, see Lucas v. Paige, 435 F. Supp. 2d 165, 173 (D.D.C. 2006) (declining to find a pretext for age discrimination in the hiring panel's "ultimate[] conclus[ion] that the interviewees' educational levels were not as important as their answers to the interview questions"), and therefore, it "must

16

respect the employer's unfettered discretion to choose among qualified candidates," <u>Fischbach v. D.C. Dep't of Corr.</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  Accordingly, the plaintiff has failed to produce any evidence to rebut Amtrak's explanation for hiring Ballance, Kearney, Francis, and Long for the Foreman II position instead of the plaintiff that would permit a reasonable jury to infer discrimination.

      **e.**        **Service Engineer HSR—Position Numbers 90073564 and 90073565**

Amtrak selected Patrick Kerod and David Samuels for these two positions.  <u>See</u> Def.'s Facts ¶¶ 213, 234.  David Byrne, the hiring manager for these positions, declined to offer the plaintiff an interview for either position based on Byrne's prior experience interviewing the plaintiff for a different Service Engineer HSR vacancy.  <u>See</u> Def.'s Mot., Ex. 67 (Declaration of David Byrne ("Byrne Decl.")) ¶¶ 3–4, 14–15.  In regards to the prior position, the plaintiff had failed to appear at his interview with no explanation.  <u>See id.</u>, Ex. 67 (Byrne Decl.) ¶ 5. According to Byrne, after the interview was rescheduled, the plaintiff requested that the interview be conducted by telephone, with "no explanation for why he could not attend in-person."  <u>Id.</u>, Ex. 67 (Byrne Decl.) ¶ 6.  According to Byrne, during that telephone interview, the plaintiff

> seemed unprepared and appeared to be researching the answers to questions during the interview.  I could hear him rustling papers and he frequently would return to a prior question to give an answer after we had moved on to the next question. Overall, my impression was that [the plaintiff] did not know the answers to our questions from personal knowledge.  In particular, [the plaintiff] was unable to provide specific details about projects he claimed to have worked on and would generally not provide direct answers to questions.

<u>Id.</u>, Ex. 67 (Byrne Decl.) ¶ 7.

The plaintiff attempts to establish pretext by attacking the legitimacy of Byrne's explanation for not selecting him for an interview.[7]  According to the plaintiff, "Byrne came to [his prior] interview angry, decided and bias[ed] against [the p]laintiff."  Pl.'s Opp'n at 5; see also id. at 22.  The plaintiff asserts that he "was driving when [he] received the phone call to the interview," id. at 19, so the "rustling papers" that Byrne heard "could have been wind," id. at 20.  Finally, the plaintiff claims that "Byrne's statements and actions are antagonistic, discriminatory, prejudic[ial], or [are] directed against [him because he is] of a different origin and/or race based on the belief that [Byrne's] own race/origin is superior."  Id. at 19.

The Court concludes that the plaintiff's criticisms of Byrne's impression of the plaintiff's prior interview performance are not sufficient to establish pretext.  See Edwards v. EPA, 456 F. Supp. 2d 72, 91 (D.D.C. 2006) (rejecting the plaintiff's "series of excuses for each deficiency identified" by his supervisor because "'it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with [retaliatory] animus'" (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001)); see also Fischbach, 86 F.3d at 1183 ("Once the employer has articulated a non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers."

---

[7] The plaintiff also states that the notes from his prior interview with Byrne were not included in the "document produced by [the d]efendant on this position," Pl.'s Opp'n at 4, and therefore requests "production of all interview documents as they existed for this noble court to confirm [ ] Byrne's ludicrous and fabricated claims[, and] to compare the two interviews [ ] for both [the p]laintiff and [ ] Kerod," id. at 4–5.  As an initial matter, the Court notes that Byrne's notes from his prior interview with the plaintiff for a different vacancy would have no reason to be included in the defendant's production of documents regarding Service Engineer HSR—Position Numbers 90073564 and 90073565.  Assuming that the plaintiff's request is made pursuant to Rule 56(d), because the plaintiff makes no showing that, during discovery, he requested the notes from his prior interview with Byrne for a position that is not directly part of this litigation, see generally Pl.'s Opp'n at 4 –5, the Court declines this request, see Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Castle Hill Health Care Providers, LLC, 312 F.R.D. 678, 683–84 (D.D.C. 2015) ("At a minimum, to benefit from Rule 56(d), a party must show that [he] has diligently pursued discovery.").

(citation and quotation marks omitted) (alterations in original)); <u>Vasilevsky v. Reno</u>, 31 F. Supp.

2d 143, 149 (D.D.C. 1998) (explaining that a plaintiff "must do more than just deny or criticize

the proffered reasons of the defendant").  Other than the plaintiff's unsupported and conclusory

allegations, he has failed to offer any evidence that Byrne harbored discriminatory animus

against him, and the plaintiff's explanations regarding his interview performance do not

contravene the sincerity of Byrne's assessment.  On this record, a reasonable jury could not find

that discrimination was the reason for the plaintiff's non-selection for the two Service Engineer

HSR positions.

<b>f.      High Speed Rail Supervisor Technician—Position Number 90137403</b>

Amtrak selected Christian Hutchinson for High Speed Rail Supervisor Technician—

Position Number 90137403.  <u>See</u> Def.'s Facts ¶ 247.  Hutchinson had fourteen years of

experience working on Amtrak's high speed rail equipment.  <u>See</u> Def.'s Mot., Ex. 4 (Declaration

of William Vullo ("Vullo Decl.")) ¶¶ 8–9, while the plaintiff "did not appear to have any

experience working on this type of equipment.  Rather, his resume indicated that he had worked

on Amtrak's 'conventional' non-high speed locomotives," <u>id.</u>, Ex. 4 (Vullo Decl.) ¶ 10.

In response, the plaintiff notes that Hutchinson had been "disciplined for failing to

perform his duties properly and [for] excessive absenteeism," but is "still on the job today."  Pl.'s

Opp'n at 42.  The plaintiff also argues that "[t]his is a job that [he] could have easily performed

based on his rigorous training and wealth of knowledge in the Acela trainset, software and other

Amtrak equipment."  <u>Id.</u>  Again, because Amtrak was free to prioritize prior experience working

on high speed rail equipment as a "more valuable" qualification for this position, Def.'s Facts

¶ 251; <u>see</u> <u>Stewart</u>, 352 F.3d at 429, the plaintiff has failed to offer evidence to rebut Amtrak's

legitimate, nondiscriminatory reason for hiring Hutchinson for this position over the plaintiff.

19

### g.      General Foreman—Position Number 90001629

Amtrak selected Ketrick Barron for General Foreman—Position Number 90001629.  See Def.'s Facts ¶ 254–55.  "There are various levels of Foreman in Amtrak's Mechanical Department.  The first-level foremen are Foreman II.  The next level up is Foreman III, and then General Foreman."  Def.'s Mot., Ex. 46 (Declaration of Teofilo Galinato ("Galinato Decl.")) ¶ 4. Barron had two years of experience as a Foreman II and two years of experience as a Foreman III, as well as experience filling in as an "Acting" General Foreman when he applied for this position, see id., Ex. 46 (Galinato Decl.) ¶¶ 10–11, while the plaintiff "had not previously worked as a Foreman for Amtrak," and did not have "similar supervisory experience [as] . . . Barron," id., Ex. 46 (Galinato Decl.) ¶ 12.

In response to Amtrak's explanation for selecting Barron, the plaintiff states that it is a "simple fact that [he] is more qualified," Pl.'s Opp'n at 39, and disputes Amtrak's determination that his advanced degrees do "not relate to the skills and characteristics [it] was looking for in a General Foreman," id. at 40; see also Def.'s Mot., Ex. 46 (Galinato Decl.) ¶ 14 (noting that the plaintiff "had more formal education than [ ] Barron but that did not make him a better candidate for a General Foreman position").

The Court concludes that the plaintiff's two master's degrees in Communications Technology and Business Administration did not make him more qualified than Barron for the General Foreman position because "[t]he educational requirement for the position was an Associate's Degree in Engineering or an equivalent combination of experience, education, and skills."  Id., Ex. 46 (Galinato Decl.) ¶ 14.  According to the hiring manager for this position, "Barron's prior leadership experience in Foreman positions was more valuable and more directly relevant to the requirements of the position than [the plaintiff's] educational achievements."  Id.,

Ex. 46 (Galinato Decl.) ¶ 14.  Because Amtrak was free to determine that an applicant's prior

experience as a Foreman was more important than another applicant's educational background,

see Stewart, 352 F.3d at 429 (deferring "to the [employer's] decision of what nondiscriminatory

qualities it will seek in filling the [ ] position"), the plaintiff has failed to produce any evidence

that would reasonably permit a jury to infer that Amtrak's determination that Barron was more

qualified for the General Foreman position than the plaintiff was the product of discrimination.

### IV.    CONCLUSION

The plaintiff is precluded from pursuing eight of the positions for which he was not

selected by the three-year statute of limitations applicable to § 1981 claims, and he failed to

either exhaust or timely exhaust his administrative remedies as required by Title VII for all of the

positions other than Systems Engineer—Position Number 90166004.  The plaintiff failed to

establish a prima facie case of discrimination for the Systems Engineer—January 2011 position

because he did not provide any evidence that he submitted an application for the position.  The

plaintiff also failed to establish a prima facie case of discrimination for Systems Engineer—

Position Number 90166004, because that position was cancelled and therefore no one was

selected for budgetary reasons.  As for the remaining hiring decisions that the plaintiff

challenges, the Court concludes that Amtrak offered legitimate, nondiscriminatory justifications

for its hiring decisions, and the plaintiff failed to present evidence from which a reasonable jury

could infer that Amtrak's justifications were pretextual.  Accordingly, the Court must grant the

Amtrak's motion for summary judgment.

**SO ORDERED** this 17th day of March, 2017.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.